# United States Court of Appeals
## For the First Circuit

Nos. 14-1382
    14-1774

UNITED STATES OF AMERICA,

Appellee,

v.

MEI JUAN ZHANG; MEI YA ZHANG,

Defendants, Appellants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Howard and Thompson, Circuit Judges.

Neil L. Fishman on brief for appellant Mei Juan Zhang.
    Joanne T. Petito and Mirsky & Petito on brief for appellant Mei Ya Zhang.
    Thomas E. Delahanty II, United States Attorney, and Margaret D. McGaughey, Assistant United States Attorney, on brief for appellee.

June 15, 2015

**LYNCH**, **Chief Judge**.    These two appeals present two questions of first impression in this circuit: (1) whether, given the language of the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. § 3663A, the United States (through one of its agencies) is a "victim" for purposes of the MVRA; and (2) if so, whether the amount of restitution imposed under the MVRA should be offset by the value of property forfeited to the Attorney General under 18 U.S.C. § 982.    We hold, in agreement with every circuit to have considered these issues, that the United States is a "victim" within the meaning of § 3663A, and that a restitution award may not be offset by the value of property forfeited to the Attorney General.    We <u>affirm</u> the restitution orders imposed by the district court.

                                I.

        Only those facts necessary to frame the issues are presented.  Defendants Mei Ya Zhang and Mei Juan Zhang are sisters who each managed Chinese restaurants in Maine where undocumented immigrants were employed.[1]  Mei Juan Zhang managed a buffet restaurant in Waterville, Maine ("the Waterville Buffet"), and

---

        [1]    Mei Juan Zhang came to the United States at age 13 in the late 1990s and worked at various relatives' restaurants until 2007, when she and her husband moved to Maine to work at the Waterville Buffet.  Mei Ya Zhang moved to the United States in 1995 and also worked at various relatives' restaurants for most of her adult life.

assisted in transporting the restaurant's employees back and forth from a "safe house" in Waterville where the employees lived.  She admitted that she was responsible for hiring new employees and that she knew some of the individuals she hired were not authorized to work in the United States.

Similarly, Mei Ya Zhang managed a buffet restaurant in Brewer, Maine ("the Brewer Buffet").  She admitted being responsible for the hiring of new employees, some of whom she knew were not authorized to work in the United States.  She also was in charge of the "Brewer Safe House" where some of the Brewer Buffet's undocumented employees lived.

Defendants' uncle, Zi Qian Zhang, was apparently the mastermind behind the hiring of the undocumented immigrants.  At the time defendants were charged, he was the owner of the Brewer Buffet and the previous owner of the Waterville Buffet.  He arranged for the undocumented immigrants to be sent to the restaurants and hired.

Defendants were charged with conspiracy to harbor and aiding and abetting the harboring of illegal aliens for commercial advantage and private financial gain, see 8 U.S.C. § 1324(a)(1)(A)(iii), (v), (B)(i); conspiracy to launder money, see 18 U.S.C. § 1956(a), (h); and conspiracy to file false employer's quarterly tax returns with the Internal Revenue

Service, see 18 U.S.C. § 371. The basis of the last charge was defendants' failure to include the cash compensation paid to the undocumented immigrants on the restaurants' tax returns, which in turn resulted in an underpayment of federal employment taxes to the IRS. The charging documents for both defendants included a notice of forfeiture pursuant to 18 U.S.C. § 982, which included any property that derived from or was used to facilitate the offenses. The government in fact seized $18,529.66 from two bank accounts related to the Waterville Buffet, and the Attorney General retained those funds as forfeiture proceeds.[2] See 18 U.S.C. § 982(b)(1); 21 U.S.C. § 853(g), (i).

Both defendants pled guilty to all three charged counts. The district court sentenced Mei Ya Zhang to 15 months imprisonment and Mei Juan Zhang to 14 months imprisonment. Both sentences represented downward variances from the applicable guidelines range.

At sentencing for each defendant, the district court held that the MVRA, 18 U.S.C. § 3663A, required it to issue an order of restitution compelling defendants to pay to the IRS the

---

[2] See United States v. $153,066.03 in United States Currency, No. 2:12-cv-00123-GZS (D. Me.), Compl. ¶ 2, ECF No. 1 (stating that the government seized $6,529.66 from the "Waterville Operating Account" and $12,000 from the "Waterville Business Account").

taxes wrongfully withheld as a result of defendants' failure to report the compensation paid to the undocumented workers at defendants' restaurants. The court ordered Mei Ya Zhang and Mei Juan Zhang to pay $88,087 and $54,288, respectively, in restitution to the IRS. The court did not offset Mei Juan Zhang's restitution obligation by the forfeiture proceeds that the government had seized from the Waterville Buffet bank accounts.

## II.

On appeal, both defendants argue that the district court erred in ordering restitution because the United States is not a "victim" for purposes of 18 U.S.C. § 3663A. Mei Juan Zhang also argues that the district court should have offset the restitution award by the amount of the forfeiture and that its failure to do so resulted in "an impermissible windfall for the government." We bypass the arguments by the government that each defendant either waived or forfeited these arguments, and turn to the merits. Cf. United States v. Pitrone, 115 F.3d 1, 8 (1st Cir. 1997).

A.       Whether the United States is Eligible to be a "Victim" Under the MVRA

The MVRA provides for mandatory restitution to the victims of certain crimes, including, as relevant here, offenses against property which are "committed by fraud or deceit." 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). The statute defines "victim"

- 5 -

as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." Id. § 3663A(a)(2). Defendants argue this term should not be construed to include the United States because the Dictionary Act, 1 U.S.C. § 1, does not include the government in its definition of "person," nor does the ordinary meaning of the word "person" include the government. Cf. United States v. United Mine Workers of Am., 330 U.S. 258, 275 (1947) ("In common usage that term ["person"] does not include the sovereign, and statutes employing it will ordinarily not be construed to do so.").

This argument has been rejected by every court to have considered it, and rightfully so. The definitions contained in the Dictionary Act apply "unless the context [of the statute] indicates otherwise." 1 U.S.C. § 1. Under Rowland v. California Men's Colony, 506 U.S. 194 (1993), "context" as used in 1 U.S.C. § 1 "means the text of the Act of Congress surrounding the word at issue, or the texts of other related congressional Acts." Rowland, 506 U.S. at 199-200. And the context here indicates unequivocally that the word "person," as used in the MVRA, includes the government. The enforcement provision of the MVRA explicitly recognizes the government as a possible victim. See 18 U.S.C. § 3664(i) ("In any case in which the United States is a victim, the court shall ensure that all other victims receive full restitution

- 6 -

before the United States receives any restitution." (emphasis added)). "[N]othing indicates that Congress intended two different meanings when it used the same word ["victim"] in §§ 3663A and 3664(i) -- related provisions adopted at the same time and codified in serial sections in the United States Code." United States v. Ekanem, 383 F.3d 40, 43 (2d Cir. 2004); accord United States v. Turner, 718 F.3d 226, 236 (3d Cir. 2013); United States v. Mateos, 623 F.3d 1350, 1370 (11th Cir. 2010) (O'Connor, J.); United States v. Senty-Haugen, 449 F.3d 862, 865 (8th Cir. 2006); United States v. Lincoln, 277 F.3d 1112, 1113-14 (9th Cir. 2002); see also United States v. Sánchez-Maldonado, 737 F.3d 826, 828 (1st Cir. 2013) (characterizing the FBI as a "victim" under § 3663A on plain error review). Indeed, if we defined "victim" differently, one wonders how § 3664(i) could ever serve any purpose. See Duncan v. Walker, 533 U.S. 167, 174 (2001) (noting that courts must, if possible, give meaning to every portion of a statute).[3]

We join our sister circuits in holding that the United

---

[3] Mei Juan Zhang's argument that the United States is not an "identifiable victim," see 18 U.S.C. § 3663A(c)(1)(B) (providing that the MVRA applies to proceedings "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss"), fails for the same reason. Section 3664(i) clearly contemplates that the United States and its agencies are "identifiable."

States may be a "victim" for purposes of the MVRA.  The district court did not err in ordering restitution to the IRS.

B.        Whether a Restitution Award May Be Offset By Forfeiture Proceeds

We start with an explanation of where forfeited monies go, before addressing the offset question.  The Attorney General has the responsibility for disposing of funds seized under the criminal forfeiture statute.  See 18 U.S.C. § 982(b)(1) (providing that the criminal forfeiture of property is governed by 21 U.S.C. § 853, which gives the Attorney General the authority to "direct the disposition of the property by sale or any other commercially feasible means, making due provision for the rights of any innocent persons," id. § 853(h)).  "Although the Attorney General and the IRS are both part of the federal government, they are distinct entities."  United States v. Joseph, 743 F.3d 1350, 1356 (11th Cir. 2014) (per curiam).

We join the analysis set forth in the Eleventh Circuit's opinion in Joseph.  There, the defendant, who, as here, had defrauded the IRS, argued that he was entitled to an offset of his ordered restitution amount by the value of currency seized by the government "which were the proceeds of [his] fraud."  Id. at 1352. The Joseph court held that, under the plain language of the MVRA, the district court had no authority to order such an offset, at

least where there was no evidence that the victim had received the value of the forfeited property. Id. at 1353-56 & n.4. The court explained that "the MVRA requires a district court to 'order restitution to each victim in the <u>full amount of each victim's losses</u> as determined by the court and without consideration of the economic circumstances of the defendant.'" Id. at 1354 (quoting 18 U.S.C. § 3664(f)(1)(A)). Moreover, a restitution order is required "in addition to . . . any other penalty authorized by law," id. (quoting 18 U.S.C. § 3663A(a)(1)), such as an order of forfeiture under 18 U.S.C. § 982.

At least five other circuits have reached the same conclusion. See <u>United States</u> v. <u>Reese</u>, 509 F. App'x 494, 500 (6th Cir. 2012); <u>United States</u> v. <u>Martinez</u>, 610 F.3d 1216, 1230-32 (10th Cir. 2010); <u>United States</u> v. <u>Taylor</u>, 582 F.3d 558, 566-68 (5th Cir. 2009) (per curiam); <u>United States</u> v. <u>Bright</u>, 353 F.3d 1114, 1120-23 (9th Cir. 2004); <u>United States</u> v. <u>Alalade</u>, 204 F.3d 536, 540 (4th Cir. 2000). Like the <u>Martinez</u> court, "[c]onvinced by the reasoning of our sister circuits, we conclude that the plain language of the MVRA . . . prohibits a district court from considering the value of defendant's forfeited property in initially determining the full amount of restitution." 610 F.3d at 1232. No offset is appropriate, at least where, as here, the

victim has not received any of the forfeiture proceeds.[4]

The district court correctly concluded that, on the facts of this case, it was without authority to offset the restitution Mei Juan Zhang owed by the amount seized from the Waterville Buffet bank accounts.[5]

III.

We affirm.

---

[4] We need not address whether a defendant's restitution obligation may be offset by the value of forfeited property that the defendant's victim has actually received, because here there is no indication that the forfeited funds seized from the Waterville Buffet bank accounts were disbursed to the victim, the IRS. See Bright, 353 F.3d at 1122-23 ("[W]hatever offsets might be due when a defendant's funds have been forfeited and paid to the victims -- an issue we do not decide -- the MVRA provisions above make clear that funds the victims have not received cannot reduce or offset the amount of losses the defendant is required to repay.").

[5] This conclusion holds even assuming that Mei Juan Zhang actually had an interest in the money held in those accounts, a point which the government disputes.